[Civ. No. 52896. First Dist., Div. Two. Mar. 3, 1982.]

ELFRIEDA MAITLAND, Plaintiff and Respondent, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al.,
Defendants and Appellants.

**COUNSEL**

George Deukmejian, Attorney General, Thomas Warriner, Assistant Attorney General, and Charlton G. Holland, Deputy Attorney General, for Defendants and Appellants.

Peter F. Goldscheider for Plaintiff and Respondent.

**OPINION**

**ROUSE, Acting P. J.—**■  This appeal involves the question whether an individual is eligible for unemployment benefits if she voluntarily terminates her employment after (1) receiving a job reclassification and reduction in salary, and (2) being advised by her supervisor that she would be eligible for unemployment insurance benefits if she quit her job.

The facts are undisputed: Plaintiff Elfrieda Maitland quit her job with Coherent, Inc., on February 1, 1980, having been employed by

that company for three months. Initially, Mrs. Maitland was hired by Coherent as an "A" quality assurance inspector at a pay rate of $6.50 an hour. Upon the completion of her three-month probationary period, Mrs. Maitland's supervisor informed her that she was to be reclassified as a "B" inspector and that her pay rate would be reduced from $6.50 to $6 an hour. Mrs. Maitland then inquired whether she would be eligible for unemployment benefits if she quit her job, and her supervisor assured her that she would.

Mrs. Maitland voluntarily terminated her employment on February 1, 1980, and filed an application for unemployment insurance benefits on February 5, 1980. Her application was denied by defendant Employment Development Department (department) on February 25, 1980, and plaintiff then obtained a hearing before an administrative law judge on March 31, 980. That judge upheld the department's decision which held that plaintiff was ineligible for unemployment insurance benefits because she had quit her job without good cause. Plaintiff appealed to the California Unemployment Insurance Appeals Board (board), and in a decision mailed on July 3, 1980, the decision of the administrative law judge was affirmed.

Plaintiff then commenced this action against the department and the board, seeking a writ of mandate to compel the payment of unemployment insurance benefits. Based upon its review of the administrative record, the trial court found that the pay reduction from $6.50 to $6 an hour would have constituted a hardship to plaintiff and her family; also, that plaintiff was informed by a representative of her employer that if she quit her job due to this cut in pay, she would be entitled to receive unemployment insurance benefits. The court concluded that plaintiff had cause to leave her employment "based on her cut in pay and the incorrect information given to her by her employer." In view of this conclusion, the court expressly refrained from determining whether defendants were estopped from denying plaintiff's application for unemployment insurance benefits. The court granted plaintiff a peremptory writ of mandate compelling defendants to set aside and reconsider their decision to deny plaintiff unemployment insurance benefits. Department and the board had each appealed from this decision.

On appeal, each defendant takes the position that, as a matter of law, the trial court erred in holding that plaintiff had good cause for quitting

her job with Coherent, Inc. They point out that section 1256 of the Unemployment Insurance Code provides, in pertinent part, that "An individual is disqualified from unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause . . . ."

They claim that the reduction in plaintiff's wages did not constitute good cause for voluntarily terminating her employment because the reduction was relatively insignificant, in that a drop in pay from $6.50 to $6 an hour amounts to only a 7-2/3 percent reduction in wages. Defendants also point out that, at the hearing before the administrative law judge, plaintiff testified that the reduction in wages, standing alone, would not have caused her to quit her job, without first finding other employment, had she known that she was ineligible for unemployment compensation benefits. In her brief, plaintiff concedes that "it may be true that the reduction of pay by *itself* may not have constituted good cause" for her to quit her job.

Support for defendants' position is found in *Bunny's Waffle Shop* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 735, 743 [151 P.2d 224], where the California Supreme Court held that a "substantial reduction in earnings" (in that instance a 25 percent wage cut) would generally be regarded as good cause for leaving employment. (P. 743.) Plaintiff has directed our attention to no authority, nor are we aware of any, for the proposition that a far smaller reduction in wages, such as plaintiff's 7-2/3 percent reduction, would constitute good cause for voluntarily leaving employment. The conclusion that such a reduction would not furnish good cause for leaving one's employment is especially compelling here in view of plaintiff's own testimony that the wage reduction would *not* have caused her to quit her job, without first obtaining other employment, but for her belief that she was eligible for unemployment compensation benefits.

The question remaining, then, is whether the reduction in plaintiff's wages, *coupled* with the representation by her supervisor that she would be eligible for unemployment insurance benefits if she quit her job, entitled her to such benefits. *Perales* v. *Department of Human Resources Dev.* (1973) 32 Cal.App.3d 332, 340, footnote 8 [108 Cal.Rptr. 167], appears to be the only case containing language applicable to this issue. In dicta, the *Perales* court stated: "We can also imagine an atypical situation where a claimant himself states . . . that he had become

unemployed voluntarily without good cause simply because he preferred receiving unemployment benefits to working; would anyone suggest that the department would be powerless to find the claimant disqualified?"

Here, plaintiff appears to bring herself precisely within this language by her own testimony at the hearing before the administrative law judge. She acknowledged that she would not have quit her employment with Coherent, Inc., without first obtaining other employment, merely because of the reduction in her wage rate, and that her primary reason for quitting her job consisted of her belief that she was eligible for unemployment compensation benefits. Such admission appears to demonstrate that plaintiff did not consider the wage reduction "good cause" for leaving her employment; further, that she merely wished to avail herself of the opportunity to obtain unemployment insurance benefits after leaving her job without good cause. Her conduct not only falls within the quoted language from the *Perales* case but also runs contrary to the purpose of the unemployment insurance system, which is to provide benefits for persons unemployed through no fault of their own and to act as a buffer against the sudden and unexpected loss of one's livelihood. (Unemp. Ins. Code, § 100; *Zorrero* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 439 [120 Cal.Rptr. 855].)

One further point requires discussion. Although, as we have previously noted, the trial court expressly refrained from passing upon the issue of estoppel, plaintiff now asserts that defendants should be estopped from denying plaintiff unemployment compensation benefits because plaintiff's supervisor made a representation to the effect that she was entitled to such benefits. Plaintiff suggests that if her estoppel argument is rejected, employers will be encouraged to use promises of unemployment insurance benefits to induce unwanted employees to quit their jobs voluntarily, while their employers would avoid having their reserve accounts charged for unemployment insurance benefits.

The flaws in this argument are twofold. First, plaintiff was faced with only a relatively slight reduction in her wage rate, a fact which lends no support to her suggestion that her employer was attempting to induce her to quit her job. Secondly, eligibility for unemployment insurance benefits is determined by the appropriate state agency, and not by plaintiff's employer. Obviously, such agency was not bound by the representation of plaintiff's employer; hence plaintiff's reliance upon that

representation, without first checking with the department, cannot be deemed the sort of reasonable reliance which gives rise to an estoppel.

The judgment is reversed.

Miller, J., and Smith, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 20, 1982. Bird, C. J., was of the opinion that the petition should be granted.